## WIGGIN *v.* BAPTIST SOCIETY.

The duty of maintaining partition fences does not extend to the owners of public buildings erected on lands laid open to public use.

ASSUMPSIT by Arthur Wiggin against the Regular Baptist Society in Stratham, for money paid and for labor and materials in building a fence between the lands of the parties, in pursuance of a report of the fence-viewers of the town.

The defendants' land was a square lot, containing about twenty-four square rods, bounded on one side by a highway, and on the other sides by land of the plaintiff. The defendants owned and occupied a church on their lot, and occupied the lot only for the ordinary purposes incident to the use of a church. The lot has not been fenced on the side next the road since the defendants have owned it. There has been a fence on the other sides, to which persons attending the church hitched their horses. The defendants graded the surface of the lot when the church was built, and have occasionally filled up holes. Some ornamental trees had been set upon it by members of the society, but none by direction of the society or its committee.

The plaintiff's land adjoining was a nursery. Persons going to the nursery sometimes drove their horses on to the church lot, and hitched them to the fence; and the plaintiff frequently went across the lot to and from his nursery, had a pair of bars in the fence, and on a few occasions packed and unpacked trees upon the lot, a very few times leaving boxes and straw, in which the trees had been packed, upon the lot for more than a day at a time.

The defendants objected that their lot was not under improvement, that they had laid it in common, and that they were not bound to build or repair a partition fence between them and the plaintiff.

The case was tried by the court, and many exceptions were taken to the proceedings of the fence-viewers, which are not reported, the

decision upon the question of liability to maintain the fence being decisive of the action.

*Stickney,* and *Wiggin,* for the plaintiff.

*Marston & Collins,* and *Hatch,* for the defendants.

BELL, C. J. The general question of the liability of the defendants to contribute to build and maintain the fence between their meeting-house lot and the plaintiff's nursery, depends, first, upon the meaning we attach to the words improve and under improvement, as they are used in the statutes, and upon the construction to be given to the alternative clause of the 11th section.

These sections are as follows: (Rev. Stat., ch. 136, sec. 1; Comp. Stat. 300.)

" The owners of adjoining lands under improvement shall build and repair the partition fence between them, in equal shares.

Section 9. If the owner of land shall have improved the same before the owner of adjoining land, and erected a division fence, he shall be entitled to demand and recover of such owner of the adjoining land, when he shall begin to improve, the value of such part of the fence as, upon any division of the fence, then or previously made by the parties or the fence-viewers, it was his duty to build.

Section 11. If any of the owners of adjoining land shall cease to improve his land, or shall lay the same in common, he shall not have a right to remove his part of the fence, but shall be under no obligation to repair or rebuild the same, so long as said land shall lay in common."

The word improved is sometimes, perhaps locally, used in the sense of cultivated. Webster's Quarto Dictionary (Improved). Its more usual signification is used, occupied, used or employed to good purpose, turned to profitable account. Webster's Quarto Dictionary (Improved). Of such advantageous use, cultivation is one species. Thus in the Revised Statutes (ch. 4, sec. 12), " If no person shall be in possession or occupation of any buildings by the selectmen deemed to be tenantable, or of any other real estate improved as pasture, mowing, arable, or otherwise," &c. In the act relating to dower of 1804 (Stat. 1815, 190, sec. 2), " Lands and tenements, cultivated or improved."

And we find ourselves unable to entertain any doubt that, within the meaning of the statute in question, land is improved when it is used or occupied for buildings, as for any other use ; and that the owner of land improved, that is used, occupied as a site for buildings, is under the same general obligation to build and support his part of the fences as if it were used for a garden or corn-field.

Upon tracing the history of these enactments, it is found that they are derived from an ordinance of the General Court of the Colony of Massachusetts, passed in 1642, or earlier. Mass. Col. Charters 65, sec. 7, where the word improve repeatedly occurs in the same sense as in our present statutes. An exception, analogous to that found in section 11 of our statute, is there found, but the

language is different: "And if the first man shall after lay open his field." This statute had been in force during the usurpation of Massachusetts, and, upon the establishment of the provincial government, was continued in force here, by a general law that "the former laws we were ruled by to stand till others made." Manuscript records in secretary's office. In 1718 (Province Laws 1771, 121), it was reënacted, with little change; the clause in question being still expressed, "And if the first improver shall lay open his said field," &c.; and it thus remained till the general revision of 1791.

In 1693, the Massachusetts Provincial Legislature reënacted the colonial ordinance, with verbal changes, which do not seem important, except that in the last clause it is said, "But if either of said proprietors adjoining do cease to make improvement of his land," &c. It seems this section was reënacted in 1785 (ch. 52), and, by section 5, this clause was then made to read, "When one party shall cease to improve his land, or shall lay open his inclosure," &c.; thus uniting the two provisions of the ordinance and of the statute of 1693; and in this form the statutes remain there in the revisions of 1835 and 1860.

In the general revision of our statutes of 1791, this clause reads, "And when one party shall cease to improve his land, or shall lay his inclosure, before under improvement, in common, he shall have a right to the value of his part from the owner of the lands adjoining, he continuing to improve."

In the revision of 1842 a part of the first section is omitted: "So long as they shall continue to improve." And in the clause here in question, "before under improvement" is omitted. But no change of phrase in the revision of 1842 seems to us to indicate an intention to change the law; and the construction of the Revised Statutes must, therefore, be the same as that of the act of 1791.

The question then is, if the two phrases—"shall cease to improve his land," and "shall lay the same in common"—are to be understood as importing the same thing, or whether they are to be understood to refer to different conditions of the property.

It is well said that the general principle of the statute is stated in the first section—"owners of lands under improvement"—particularly as qualified in the statute of 1791—"so long as they shall continue to improve." And it is, that the burden of maintaining fences depends on the improvement of the land. And the like inference is drawn from the words, "before under improvement," in the phrase, "shall lay his land, before under improvement, in common," in the statute of 1791.

But this idea was distinctly expressed in the statute of Massachusetts of 1693—"shall cease to improve his land;" and it is not apparent what occasion there could be to add the second clause—"or shall lay open his inclosure"—if nothing more was intended. Nor is it easy to account for the use of the word "or," if the intention was that the party must cease to improve and lay open his inclosure. And in the statute of 1791 there seems little occasion to add to the phrase, "shall lay open his field," the words, "shall

cease to improve," unless it was supposed that there were two differ-ent cases to be provided for, two exceptions to be made, instead of the one referred to in the first section by the words, " under im-provement," and " he continuing to improve."

It seems to us that there are many cases where a man may con-tinue to improve—that is, to use, occupy, turn to profitable account his land—where he can derive no advantage from a fence.   Such are the cases of wharves, ship-yards, mill-yards, and the like, com-mons, and common fields, where, though the owner should be com-pelled to contribute to the common fence, he can derive no benefit from a partition fence against his neighbor ; to which may be added the not uncommon case, in many parts of the country, where lands are, by common consent, cultivated without fences, either common or partition.

The case of public buildings seems to us to fall within this class. Meeting-houses, school-houses, town-houses, court-houses were here-tofore often placed on open commons, beside the highways, and many are so at this day.   It contributes in no degree to their utility or convenience to inclose the land on which they stand with fences, while generally it is most convenient that it should be laid in com-mon or laid open, that it may accommodate the horses and carriages of people who visit them.   It would not be reasonable to burden the owners of such property with the expense of maintaining fences exclusively for the benefit of others.